HART v. UNITED STATES.

No. 7286.

United States Court of Appeals for the District of Columbia.

Decided June 19, 1939.

F. Joseph Donohue, John H. Burnett, and E. Russell Kelly, all of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Charles B. Murray, Asst. U. S. Atty., both of Washington, D.C.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

PER CURIAM.

The appellant, a physician practising in the District of Columbia, was convicted of procuring a miscarriage not necessary to the life or health of the patient, in consequence of which the patient died.[1] His appeal disputes the sufficiency of the evidence to establish either (1) the fact that he procured the miscarriage or (2) the fact that the miscarriage caused death. We think there was enough evidence on both points.

(1) On March 15, 1937, a witness delivered to the patient laboratory proof of her pregnancy. There was evidence that on the afternoon of March 16 she went into defendant's private office and remained there with defendant 20 or 25 minutes; that after she came out, defendant informed a witness (a) that he had packed her womb that morning and removed the packing that afternoon, and (b) that the womb was clear. The same witness also testified to later admissions by the defendant. There was testimony that packing is one way to cause a miscarriage. Defendant admitted on the stand that the patient consulted him twice on March 16. He contended that he gave her no treatment except one "ethical" hypodermic. That theory can hardly be reconciled with his admission that he received three $10 bills as a fee for what he did.

(2) There was evidence that within 24 hours after March 16 the patient became very ill; that within a few days she developed a high and fluctuating fever, characteristic of infection in the blood-stream; and that on March 25 a doctor made a manual examination, which disclosed a semi-solid object lodged in the neck of the uterus. He immediately diagnosed the case as infection of the blood-stream by a septic incomplete abortion. A surgeon confirmed this diagnosis; and an operation was performed, at a hospital, on March 26. The obstruction in the uterus, which proved to be a piece of afterbirth, was then removed. A blood culture taken on March 29 showed a severe form of blood poisoning caused by staphylococcus aureus. This infection usually remains in the blood-stream from a few days to a few weeks before it causes death. It caused death on April 1. The Deputy Coroner examined the corpse, found infected material in the uterus, and reported that death was caused by septic abortion.

To show that the infection of the uterus may not have resulted from the abortion, appellant points to the facts that a physician had made a cervical smear in February and that, as the Deputy Coroner testified, the infection he found "could" have been caused by a digital examination. But the jury were clearly entitled to accept his opinion, and that of the physician and the surgeon who had severally diagnosed the case in the patient's lifetime, that the infection was actually caused by a septic abortion. No conflicting diagnosis, so far as appears, was ever made. Infection was obvious, and had caused severe illness, before the manual examination of March 25.

Affirmed.